LOVELL v. SEYBOLD MACH. CO.

(Circuit Court, S. D. New York. January 10, 1908.)

1. PATENTS—INFRINGEMENT—BOOK-TRIMMING MACHINE.

The Lovell and Bredenberg patent, No. 490,877, for a book-trimming machine, was not anticipated and discloses invention, but is an improvement merely, and not a pioneer, and is entitled only to a narrow construction and a limited range of equivalents. The machine is designed and adapted to take books one by one and feed them to the trimming mechanism, to be operated on successively, and, in view of the limitations imposed on it by the prior art, is not infringed by a machine constructed to receive and trim a pile of books at a single operation, and which is also an improvement in a different line upon prior devices, and omits some of the means shown in the patent.

2. SAME.

The Lovell and Williamson patent, No. 734,907, for a book-trimming machine, claim 11, if conceded novelty and invention, is for a combination of old elements, and must be limited to substantially the means shown and described. As so construed, *held* not infringed.

In Equity. Suit to restrain alleged infringement of United States letters patent No. 490,877, dated January 31, 1893, to Charles W. Lovell and Alfred Bredenberg, and No. 734,907, dated July 28, 1903, to Charles W. Lovell, as inventor and assignee of David Williamson, his co-inventor, both for book-trimming machines.

A. G. N. Vermilya, for complainant.

Grafton McGill (Alfred M. Allen and Melville Church, of counsel), for defendant.

RAY, District Judge. While the patents in suit are for book-trimming machines, an art which had commanded attention for many years and brought to it the efforts and inventive skill of many persons, it cannot be successfully asserted that this art had made such advance that there was little or no room for further progress and decided improvements, or that the machines and devices described in the claims and specifications of the first patent in suit were not improvements on those which had come before, and so much so as to disclose new and novel features and patentable invention. Having examined the prior art, and the devices of the complainant, and his claims and specifications, I am prepared to decide, and therefore hold, that patentable novelty is disclosed and that the claims of patent No. 490,877 in issue here are valid, having in view the prior art. There is no anticipation or prior use of these book-trimming machines, whether some or all of the elements of the combination be old or not. The prior art does not disclose the combinations of these claims. Nor do we have a mere aggregation of old devices. While we have had feeding devices similar to the one shown, and also book and pamphlet cutting or trimming devices similar, in some respects, to those shown and described, we have not had these or the elements of these claims in this combination, or in any combination, operating in substantially the same way to produce the same result, viz., a properly trimmed or cut book.

But these facts by no means dispose of this case, for we are brought face to face with the problem of giving construction to these claims, having in view the prior art to which I have referred, and ascertaining their true scope and meaning. In doing this we are met by prior patents and by a file wrapper which, read with the claims in suit and the specifications of the patents, involve us in considerable doubt. Clearly the patentees were not pioneers, and they have not produced a pioneer invention. They were improvers, and as such are to be treated, and in the light of that fact must these claims in question be construed.

The Lovell and Bredenberg patent of January 31, 1893, No. 490,877, has 34 claims, 4 of which, only, are in suit—claims 3, 4, 5, and 9. These claims read as follows:

"3. The combination with automatic trimming mechanism comprising clamping devices for clamping fast the book to be trimmed and knives for trimming its side and end edges, of feeding mechanism adapted to carry the books to be trimmed successively into position to be acted on by said trimming mechanism, and also subsequently to feed the trimmed books from the trimming mechanism.

"4. The combination with primary and secondary trimming mechanisms adapted to make successive cuts at right angles to each other for trimming a book, of a feeding mechanism for transferring the partly trimmed book from the primary to the secondary trimming mechanism.

"5. The combination with primary and secondary trimming mechanisms adapted to make successive cuts at right angles to each other for trimming a book, of feeding mechanisms for carrying the books to be trimmed in succession first to the primary and then to the secondary trimming mechanisms."

"9. The combination of an intermittently operating trimming mechanism comprising clamping devices for clamping a book and knives for trimming its edges, an intermittently advancing feeding mechanism adapted to carry the books to be trimmed successively into position to be acted on by the trimming mechanism, and a driving mechanism adapted to actuate alternately the feeding mechanism and the trimming mechanism, whereby the books are first fed to the trimming mechanism, then engaged and clamped and trimmed by the latter and then released and again fed forward."

As we read the claims, we are struck with the language employed and idea expressed in each, to wit: Claim 3: "Clamping devices for clamping fast the book to be trimmed," and "knives for trimming its side and end edges," and "feeding mechanism adapted to carry the books to be trimmed successively into position to be acted on." In claim 4: "Mechanisms adapted to make successive cuts at right angles to each other for trimming a book," and "feeding mechanism for transferring the partly trimmed book," etc. Claim 5: "Mechanism for carrying the books to be trimmed in succession first," etc. Claim 9: "Clamping devices for clamping a book," and "adapted to carry the books to be trimmed successively into position," etc. All this conveys the idea that the books are to be carried one by one to the trimming mechanism of claims 3 and 9, and one by one to the primary trimming mechanism, and one by one thence to the secondary trimming mechanism of claims 4 and 5, and that one book only is to be trimmed at a time at each trimming mechanism. Of course, it does not imply that one book may not undergo the trimming process at one mechanism while another book is being trimmed at the

other. Possibly it should be remarked here that claims 4 and 5 by their terms call for primary and secondary mechanisms, while claims 3 and 9 do not.

This idea of a book-trimming machine for trimming one book at a time, and so designed, and, it is asserted, so limited by express terms in each of the claims in suit, is emphasized by the language of the specifications.

### Prevailing Mode.

The specifications first describe the customary mode of trimming a book as follows:

"It is now customary in the manufacture of paper covered books or pamphlets to trim them by piling them together in as deep a pile as is practicable, placing this pile in a paper-cutting machine, bringing down a clamp upon the pile, and then operating the knife to shear off the surplus paper from the edge of the pile; this operation being performed three times for the tops, sides, and bottoms of the books."

### Defects of Mode.

The specifications then point out the defects and undue expense of this mode of doing the work as follows:

"This method of trimming is defective, in that the books at the top of the pile are cut to a smaller size than those at the bottom by reason of the effect of the clamp which holds the pile, and which in coming down invariably draws the upper portion of the pile away from the gage. The operation is also unduly expensive by reason of the numerous manipulations necessary, whereby the labor cost is rendered considerable."

### Object of the Invention.

Next they state the object of the invention as follows:

"The object of our invention is to produce a machine into which the books may be fed one by one, and which will automatically trim the books to exact size, and deliver the trimmed books out of the machine. By cutting the books one at a time, no appreciable difference is made in the size to which the books are cut, and by feeding them to the cutting or trimming mechanism automatically they are cut in rapid succession and the expense of trimming is thereby greatly reduced."

### Of What Does the Invention Consist?

Next the patentees state in what their invention consists in the following words:

"Our invention, therefore, consists broadly in the combination with automatic trimming mechanism of feeding mechanism adapted to carry the books successively to the trimming mechanism. By preference the feeding mechanism also delivers the trimmed books from the trimming mechanism."

In describing what the trimming mechanism may consist of, and the mode of operation, the specifications in many places use such expressions as these: "Between which the book is firmly clamped," and "the book being clamped against this block," and "may be employed for holding the book," and "to which the book is fed," and "adapted to engage books supplied to the machine and feed them one after another," and "feed table on which the operator lays the books one after another," and "encounter the books and push them along until they are successively brought into proper position to be acted

LOVELL V. SEYBOLD MACH. CO.

upon by the trimming mechanism," and "thus the one feeding mechanism feeds each book in succession first to the primary mechanism," and "thereupon the frame, D, rises, the book being lifted on the table, B," and "cuts through the edge of the book," and "thereupon the frame, D, descends to its first position the plate, B, following it down and lowering the partly trimmed book to its original level," and "the crossbar, I, pushing the trimmed book over the plate, C, and onto the delivery plate, b," down which it slides and falls out of the machine.

Defendant insists that complainant's patent, properly construed and limited, as it must be, does not broadly cover a similar book-trimming machine which is designed to receive and clamp and trim and deliver a pile composed of several books or pamphlets, all together; the pile remaining intact from the beginning to the end of the operation; that this is true, even if the machines of complainant are strong and efficient enough to receive and trim such a pile, and that for this reason among others defendant does not infringe; that defendant's alleged infringing machine is of a different construction and operation, and is especially designed and constructed and adapted to receive and transmit and trim a pile of books, consisting of several, each process operating on the pile as a unit and effectively and efficiently doing the work on the pile or unit; that thus by it several books are trimmed on one edge by one movement of the knife at one cutting station, and at the ends by one movement of the knives at the next cutting station. The defendant says this is a new, or at least a different, conception and combination from that of the patentees of complainant's patent, and marks another or different step in advance in the art, and that, while complainant is entitled to all its patentees invented and described, and may trim piles of books if it can, still, so far as its monopoly is concerned, it is limited to what is specifically described in its patent and that defendant, occupying the position of an improver in the same art, is entitled to the full benefit of its conception and advanced step, if its machine discloses any, and hence does not infringe the limited claims of the patent in suit; that in no event is its device that of the patent in suit, or covered by it or within its claims. The defendant says its trimming machine is constructed on a totally different plan from that shown in the Lovell and Bredenberg patent, and follows in its general plan the lines of the older paper-cutting and paper-trimming machines. It contends that defendant's type of machine is very well illustrated in a patent to Withey of June 15, 1890, No. 229,795, meaning, I suppose, patent to Withey of June 15, 1880, No. 228,795, as I find no such patent as is referred to in the printed brief in either the proofs or exhibits. This takes us to the prior art, which we will examine before taking up more in detail complainant's construction and operation.

The invention of the patent to Withey is for "pamphlet trimmer," an analogous art, and "has for its object to produce an organized machine for rapidly trimming large quantities of paper to a uniform size." It consists, partly, in the combination with (1) the paper cutting mechanism, (2) a rotatable table, (3) provided with suitable paper holders upon which to (4) hold the paper in gaged position, and (5) means to automatically intermittingly rotate the table at the proper

time to bring the paper holders, supplied with a pile of paper to be trimmed, under the action of the cutting device, (6) shown as a knife, (7) guided in ways inclined to the surface of the pile of paper to give a drawing cut, and (8) the knife cutting down through the pile of paper upon (9) a cutting bed attached to the paper holder; also (10) a presser to press and hold firmly the pile of paper just behind the line where the knife cuts it, (11) the presser being adapted to apply a positive pressure of about the same amount to piles of different thicknesses; also (12) a uniformly rotating shaft, in combination with the rotatable table, and (13) intermediate devices to impart an intermittent motion to the table, and (14) in the combination, with the knife, of the presser and devices to actuate it properly at the desired time in relation to the movement of the other devices. We have, therefore, in a paper-cutting mechanism complete: (1) A rotatable table; (2) paper holders to hold the paper to be trimmed or cut; (3) means for rotating the table automatically and intermittingly, so as to bring the paper at the proper time under the cutting knives or device; (4) a cutting bed or block underneath the paper placed for cutting; (5) a presser operating behind the knife to press and hold the paper while being trimmed; (6) a uniformly rotating shaft operating in combination with the table; (7) intermediate devices to impart the intermittent motion to the table; (8) devices to actuate the knife and presser at the proper time, so they will operate in relation to the movement of the other devices.

In operation a person places a pile of paper to be cut in a holder on the table, and it is carried to and underneath the cutting device, and then pressed or clamped and cut as the knife descends, and released as it ascends, when the table and holder, carried with it, again rotates, and another pile is brought under the knife or knives. As we have but one knife, I take it the pile is cut on one side, and then shifted so as to present another uncut side before again coming under the action of the cutting device. The knife cuts down through the pile to the cutting block, the necessity and utility of which is apparent. Of course, the table is at a standstill when the knife operates, and vice versa. The pressing or clamping device takes hold of the paper before the knife strikes it. I see no reason why this would not trim an unbound book, after the several signatures have been sewed together. I think it unnecessary to describe the construction and mode of operation of the mechanism moving the table, the knives, and the presser. In this old machine we have no feeding mechanism independent of the table, which, operating as a feeding device, carries the paper from its first position when placed thereon in one of the paper holders to the cutting device. In both the prior art and in complainant's machine, as well as in defendant's, we have a feeding device. In the prior art and in defendant's machine it is the rotatable table, while in complainant's it is the endless chain described. Complainant's machine, in this respect, does not follow the prior art; but the defendant's does.

In the patent in suit we have no paper holder as such; but we do have an equivalent, and we have means for rotating the table or its

substitute automatically and intermittingly, so as to bring the books to be trimmed under the cutting or trimming knives at the proper time; a cutting bed or block for the knife to strike after it has passed through the paper; a presser or clamp to grasp and hold the book while being cut; a rotating shaft operating with the table; intermediate devices to impart intermittent motion thereto, and mechanical devices to actuate the knives and clamp, or "presser," at the proper time, so they will operate in relation to the movement of the other devices. It seems clear to me that Lovell and Bredenberg were plainly taught every idea of means and operation and result by this Withey patent. Deliver the book on the rotatable table, or a substitute, hold it in position, carry it to the cutting or trimming device or knives, halt, clamp or press it firmly, and then cut or trim the side, or side and ends, and then release and pass on. Lovell and Bredenberg improved the various movements, simplified the cutting, added and arranged more knives, so as to avoid changing the position of the thing to be cut or trimmed, and added the delivery chain ladder device, operating as does an endless chain, an old and a well-known device, so as to obviate the necessity of placing the book directly in the cutting machine and taking it therefrom by hand. This feeding device of the complainant's patent in part takes the place of the rotatable table of the prior art; but defendant does not use it. But still the book or paper to be cut must be placed in or on this feeding device by hand, and taken therefrom by hand, or else dumped. Clearly Lovell and Bredenberg were improvers, but not pioneers. They have a new and improved combination of old elements, some of them improved, with an element substituted.

The complainant's book-trimming machine follows along old lines with improvements. The defendant's book-trimming machine follows along old lines, in many respects the same old lines, as did Lovell and Bredenberg, as they had the right to do, with improvements and changes such as it had the right to make. The defendant has added to the old art additional cutting stations, as did Lovell and Bredenberg; but I see no conception amounting to patentable invention in doing this. The defendant does not use the endless chain or ladderlike feeding mechanism of complainant's patent. But I cannot see that it was invention to add that merely or that defendant is an infringer if in place thereof it uses the old rotatable table of the prior art, even if it be the equivalent for practical purposes of complainant's feeding device. An old element in the art the defendant has the right to use in a combination of its own.

Was there patentable invention in the adoption of the primary and secondary cutting or trimming mechanisms? The object is to cut or trim the front of the book, and then the ends, or vice versa, without removing it from the machine. But I do not see invention in putting two trimming devices on or in connection with the same revolvable table actuated intermittingly. To do this, in my judgment, required only ordinary mechanical skill and judgment. Much was said on the final hearing as to the proper interpretation of claims 4 and 5 in the use of the expression:

"The combination with primary and secondary trimming mechanisms adapted to make successive cuts at right angles to each other for trimming a book."

I do not see any ambiguity in this expression. It is very evident that the cutting devices are not necessarily set at right angles to each other, and that the knife or knives of the one are not to be set at right angles to the one knife or to those of the other, but that the book, being on its support and carried to the first cutting station, is then to be trimmed by a knife coming down squarely and truly across its front edge, or by knives coming down squarely and truly across the ends, as the case may be. Having been thus trimmed at one station, it is carried to the next, where a cutting device is so arranged and located that its knife or knives, as the case may be, comes down and makes a cut at right angles to the first cut. Any other arrangement of the cutting devices would defeat the purpose of the machine, which is to properly trim the book. Properly done, the cuts across the ends must be exactly parallel to each other, while the cut across the front edge of the book must be exactly at right angles to the cuts across the ends. It is entirely immaterial whether the ends or the front edge of the book be first cut or trimmed.

What the complainant claims in claim 3 is the combination with (1) automatic trimming mechanism, comprising (a) the clamping devices for clamping the book and (b) knives for trimming its side and end edges, of (2) feeding mechanism adapted (a) to carry the books to be trimmed successively into position to be acted upon by such trimming mechanism and then (b) to feed or carry the books from the trimming mechanism. Here we have the single trimming mechanism, knives which will completely trim the book, and a clamping device which will hold it while being trimmed, and a feeding device to carry the book to such mechanism before being trimmed and take it away after being trimmed. This feeding device which Lovell and Bredenberg have described is not used by defendant. If some one or any of the old feeding devices was intended or is covered by the claim, it is void, as not disclosing patentable invention. It would be a combination well known to the prior art. To "feed the trimmed books from the trimming mechanism" simply carries them away from it and does not deliver them from the machine itself. So "to carry the books to be trimmed successively into position to be acted on" simply carries them from the place where first placed in the machine by the operator. The language is broad; but the prior art, already described, has and shows this very combination, viz., a feeding table to carry the paper to the trimming device or mechanism, which mechanism comprised a presser or clamp and a knife, and then take it away. Adding two more knives, or one more, does not distinguish it from the prior art.

Claim 4 calls for primary and secondary trimming mechanisms, but not automatic trimming mechanism; that is, two sets of knives and clamps, each set at a different point, and a feeding mechanism for carrying the book from the one to the other.

Claim 5 only differs from 4 in that it has feeding mechanism for carrying the books to be trimmed, one at a time, or "in succession," first to the primary and then to the secondary trimming mechanisms.

Claim 9 has (1) an intermittingly operated trimming mechanism, (2) intermittently advancing feed mechanism to carry the books "successively"—that is, one by one—into position to be acted on, or trimmed, and (3) a driving mechanism which actuates alternately the feeding mechanism and the trimming mechanism. Here we have but one trimming mechanism, comprising two or three knives, three being understood, and the clamping device. Here again we have the feeding mechanism described, and, while such a mechanism is old, I am inclined to think the combination as a whole discloses patentable invention, but of a narrow, not a broad, nature. If we undertake to say that this claim is broad and to be broadly construed, and may carry and trim any number of books at one cut of the knives, and that the elements of the combination include any one of their kind known to the prior art, or any well-known equivalent, we find an "intermittingly operated trimming mechanism, intermittently advancing feed mechanism, driving mechanism actuating alternately the feeding and trimming mechanisms," all old in the prior art, and it is an old combination and discloses no patentable invention. In view of the prior art, it discloses patentable invention for the reason that, read with the specifications, as it should be, the claims refer to certain specific things therein described and used in the combination to do certain things in a certain way and produce a given result. Construed narrowly, as it should be, the defendant does not infringe.

Now, what does the complainant claim as the novel patentable conception of the patent in suit? It says, referring to the brief:

"None of these machines [of the prior art] were automatic: that is, none would take a series of books, or stacks of books, one after another, and completely trim them and feed them to a place convenient for removal."

But Withey's patented device would take piles of paper, or stacks of paper, one after another, if placed therein, and feed them to the trimming mechanism, and thence to a place convenient for removal. The principal trouble was that only one side was cut at a time, and hence the position of each pile had to be changed while in the machine and presented to the knife or cutter four times if you desired to cut each side, or three times if you desired to cut three sides only. And it was automatic.

Complainant further says:

"These considerations [replacing skilled labor with machinery, and reducing cost] determined that the machine must be automatic. It must of itself perform all the operations from the time the book or stack of books was fed to it until, completely trimmed, they were ready for removal."

This, I take it, was not a patentable conception.

Complainant next says:

"Then came the leading thought of the invention, to wit, a plurality of trimming mechanisms and devices for feeding the book or stack of books."

But if one trimming mechanism would trim one edge or end of the book while the machine was operating, or three sides if three knives were provided, surely two such mechanisms would trim two sides or ends, and three would trim three sides as the side or end was presented to it, and hence only a mere duplication of mere trimming devices was

necessary. This was hardly a patentable conception. And mere mechanical skill would duplicate or triplicate the devices. But this problem remained: Either the book must change its position, or the second cutting device must be so arranged as to cut a different edge or end of the book. To do this involved mechanical skill only. And the prior art taught that a rotatable table holding the book would so present a book to the fixed knife.

Complainant further says (and I am quoting from the brief):

"This thought crystallized into operative devices which appropriately feed the pile of sheets committed to its care, would seize and hold that pile, clamping it tightly, that the cutting might be true, and cutting the pile while thus held, is the heart of the invention of Lovell and Bredenberg, as set forth in patent 490,877," etc.

A plurality of trimming mechanisms, devices for feeding the book or books, clamps as a part of the trimming device to hold the book while being trimmed, is the heart of the invention; but, aside from a plurality of cutting devices in the same machine, there is no new thought or conception here. A trimming mechanism, a feeding device, and a clamping device as part of and working with the trimming mechanism, were old—shown in the prior art.

Again:

"Theirs [referring to Lovell and Bredenberg] was a long step forward in the art, and, while there were novelties in the specific form of some of the devices they conceived, described, and employed, the soul of the invention lay rather in the combination of devices calculated to do certain things in automatic sequence, to accomplish the end in view, than in the exact form of any one of the several devices they had so combined."

The long and short of the complainant's contention is that invention resides in the combination of old devices in such a manner as to completely trim a book on its front edge and two ends without removal from the machine; and, I repeat, the only problem was to so arrange two trimming mechanisms that as the table carrying the book, or the feeding mechanism, doing the same thing, moved, it would present, without the book itself being turned, the edge of the book to the knife of the first trimming mechanism and the ends of the book to the knives of the second trimming mechanism. This was done; but I do not think that Lovell and Bredenberg monopolized by their patent the right to construct, use, and sell a book-trimming machine having a plurality of trimming mechanisms.

The defendant has devised and constructed a machine which is within the claims of the patent broadly construed, construed as we would construe the patent of a pioneer, but which is not within the claims of the patent narrowly construed, as they must be in view of the specifications, the prior art, and the action of the Patent Office, and of the fact that both the patentees of the patent in suit and the defendant are mere improvers in a confessedly crowded art. I do not think complainant's device made in accordance with the patents is an operative device for trimming more than one book at a time properly and successfully. One or more of defendant's witnesses so states, and the reasoning is to my mind satisfactory. Again, I do not think it was ever intended that it should. The language of the claims and

specifications negatives such a claim. I am familiar with the rule that a patentee with a valid patent, having described one thing it is designed to do and will do, is entitled to the benefit of all it will do, whether he knew it or not when he took his patent. But I find no satisfactory evidence that complainant's book-trimming machine, made in accordance with the patents in suit, will do the work of trimming a pile of books properly and successfully. It will not operate in the same way to produce the same result, or produce the same result, that is attained by the defendant's machine.

I think this case quite similar to Van Epps v. United Box Board & Paper Co., 143 Fed. 869, 75 C. C. A. 77, where the court said, after holding the patent valid:

"The defendant by the elimination or modification of the claimed details of the patented construction, and a readjustment of relative size and location of supporting bars, diaphragms, and flow box, either permissible by reason of the disclosures of the prior art or not covered by the claims in suit, has succeeded in constructing a noninfringing machine."

That is what this defendant has done. It has so varied its construction, its ideas of means and means, its operation and result, as in view of the prior art and the specifications and claims of the patent in suit it had the right to do, that its machine, the "Seybold continuous feed trimmer," described in Exhibit F, does not infringe. Identity of result from the operation of two different machines is some evidence of infringement; but it is not sufficient evidence. It must appear, where the patent is for a combination, that the machines have the same combination of elements operating in substantially the same way and producing substantially the same result, unless it should appear that the complainant has a patent for one of the elements used by defendant and that the defendant has appropriated that element. A patented machine is infringed by another machine which incorporates in its structure and operation the substance of such invention. Infringement is not avoided by adding other elements, or by discarding nonessentials; but it incorporates the substance of the invention when it uses all the elements of the claims of the patent operating in substantially the same way to produce substantially the same result. Infringement is not avoided by mere changes of form, or location of parts, or change of material, or the substitution of equivalents well known to be such at the time of the invention. But such is not this case. In feeding books one at a time to the trimming mechanism, to be trimmed one at a time and then fed one at a time out of the machine, or in feeding books one at a time to the first cutting station, and then one at a time to the second station, and then one at a time on to the delivery point, it was unnecessary to clamp the book until it reached the first trimming station. Hence no provision was made for doing this. But in defendant's machine, designed for another purpose, designed to operate in a different manner and to produce a different result, the complete trimming of a pile of books, it was necessary to keep the pile in perfect alignment and position from the starting point up to the first trimming station, or mechanism; and hence other and additional devices had to be pro-

vided, and corresponding modifications and provisions made. Hence, when the books are first placed in defendant's machine, they are clamped. In complainant's machine and with its feeding device it is impossible to do this. This is not a mere addition to complainant's machine. To do this it was necessary to discard the feeding mechanism of complainant's machine and claims, and substitute another provided with a clamping device, and which other was not the well-known equivalent, but a different one, operating differently, and carrying and delivering the books in a different manner. Here, as elsewhere, the machines are differentiated.

It is now so well settled by the decisions of the Supreme Court of the United States as to make the rules fixed and inflexible that "no one is the infringer of a combination claim unless he uses all the elements thereof"; also, while the inventor "is at liberty to choose his own form of expression, and while the courts may construe the same in view of the specifications and the state of the art, it may not add to or detract from the claim"; also, "where the patent does not embody a primary invention, but only an improvement in the prior art, the charge of infringement is not sustained if defendant's machines can be differentiated"; also, "a greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than where the invention is simply an improvement, although the last and successful step, in the art theretofore partially developed by other inventors in the same field." Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 406, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100, and cases cited. Judge Day, in giving the opinion of the court, defines the word "pioneer," as applied to an invention, and says:

"This word, although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before."

This, evidently, is the meaning Justice Day had in mind in using the words "pioneer character." Also, when there has been a rejection and an amendment in the Patent Office:

"It is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim, and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices."

Also, where the patent was an improvement but not a pioneer:

"Conceding that this spiral rod and its connections with the cylinder in the manner and for the purposes stated is a novel feature in the combination and entitled to protection, it is of that narrow character of invention which does not entitle the patentee to any considerable range of equivalents, but must be practically limited to the means shown by the inventor. The distinction between pioneer inventions permitting a wide range of equivalents and those inventions of a narrow character, which are limited to the construction shown, has been frequently emphasized by the decisions of this court." Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 617, 621, 27 Sup. Ct. 307, 51 L. Ed. 645.

The claims of the patent in suit, or two of them, were somewhat narrowed in the Patent Office; and as this was an improvement merely, and not a pioneer, the complainant is limited "to the construction shown," and is not entitled "to any considerable range of equivalents," and is limited to "the means shown." So limiting the claims of the patent in suit, No. 490,877, as the feeding device shown and described with some other of the means shown are not used by defendant, I am constrained to hold that defendant does not infringe the claims of that patent.

Coming to patent No. 734,907, to Lovell and Williamson, for improvements in book-trimming machines and analogous devices, and to claim 11 thereof, the one in suit here, we have:

"In a cutting machine, a plate-carrier, mounted to move laterally and in turn supporting a clamping-bar and a knife-carrier, together with means for holding said plate-carrier in different lateral positions, all substantially as set forth."

This combination is of old elements in an old art, and is not a pioneer. It is substantially limited to the means shown and described. We have a plate-carrier, a clamping-bar, a knife-carrier, and means for holding the plate-carrier in different lateral positions. The plate-carrier is mounted to move laterally and supports the clamping-bar and a knife-carrier. This device, as I understand it, is for moving the two sets of knives and clamping-bars in a trimming mechanism, designed, say, to trim each end of a book at the same time, towards each other or from each other, as it is desired to trim books of different lengths. A "set" is a knife and a clamping-bar. In a framework a carriage runs back and forth, and moves books from one position to a third position by means with which we are not at present concerned. At this third position the device of claim 11 is located. The plate-carriers are placed one on each side of the position occupied by the pile of books. Each consists of a frame supported on rods, four in number, two at each end, one above and one below the frame, and passing across it. They are threaded to correspond with orifices in the frames, with right and left-hand screw threads, respectively. Both frames are supported by the same rods. The outer ends are provided with bevel gears, which mesh with others on a rod having a handle, and by turning this handle the carriers are moved nearer to or further from the center of the main frame, as may be desired. It depends on which way the handle is turned. In "ways" on each carrier there is mounted a clamping frame which carries at its upper end a clamping-bar. When the uprights of this frame are brought or moved down, the clamping-bar impinges on one edge of the book. The other edge is also clamped at the same time by the other bar. Each carrier supports in its "ways" a knife-carrier also, the upper part of which carries a knife blade and the frame and knife-carrier are both connected to a rocking lever. This clamping-bar is slotted at the lower side, and a roller cutter bed registers with the slot. When this lever is rocked towards the feed end of the machine, the clamping frames are drawn downwards till the clamping-bars rest on the ends of the book, respectively. If pressure is now continued, the clamping-bars will

press firmly on each end of the pile of books; but, as the table underneath prevents the further downward movement of the clamping-bars, the point where the lever is pivoted to the frames becomes a fulcrum, and the knives are forced upward and their edges are forced against and trim off the edges of the pile of books. By a reverse stroke the clamps are opened and the pile of books is advanced to a fourth position, where by a similar device operated in the same way the front edge of the book is trimmed. Moving the carriers by turning the rods moves the frames and clamping-bars and knives towards th∋ center or away from it, as desired. It goes without saying that the closer to the knife the clamping device is the better.

Complainant says that, if the clamps and knives are separately carried, they must be separately adjusted, which is, of course, true, unless a mechanism is provided to accurately adjust the carrier of each at the same time and by the same movement. He says that Lovell and Williamson, aware of the difficulty and the delay of separate adjustments, overcame it by mounting a clamp and a knife in one carrier, and arranged that the carrier and all its burden should be moved as a whole to make the adjustment. As it is necessary that the clamp shall take hold before the knife commences its work, and continue to hold during the cutting, the frame carrying the clamping-bar and the frame carrying the knife are both attached to the one rocking lever and operated by it. If this device, which is made up of old and very familiar elements, is new, or rather presents a new combination operating in a new way to produce a new or improved result, and does, it may be patentable. If such is the case, I think it is.

But defendant says it is anticipated by the prior art, and refers to patent to Elder, No. 10,122, October 11, 1853, to Snow, No. 51,234, November 28, 1865, to Sands, No. 355,557, January 4, 1887, and to Noyes, No. 218,307, of August 5, 1879. The Noyes patent is for a cutting or trimming mechanism for cutting and trimming wood veneer; but it is a trimming machine, and I think an analogous art. In this device we have a plate-carrier, the carrier on which the uprights carrying or supporting the clamps and knives or saws are supported and with which they move, and they are mounted so as to move laterally, or one so moves, and both might equally as well. There are means for holding said plate-carrier in different lateral positions. These means differ from those actually described in the patent in suit; but this, with many to select from, is a mere matter of selection. Mr. Steuart says, speaking of this Noyes patent:

"The specific arrangement called for by claim 11 is found in the Noyes patent, No. 218,307, August 5, 1879. Referring particularly to the last-mentioned patent, it will be seen that there is a frame, B, at the left-hand side of Fig. 2, and a frame, A, at the right-hand side of Fig. 2; these two frames being each of them a plate-carrier in the sense in which that term is used in the claim. The frame, B, is adjustable by slot and bolt connections with the side frame, C, of the machine. In the frame, B, there is mounted the clamping-bar, D, and a knife-carrier, J; these two parts being movable toward and from each other, so as to cut the work which is passed between them. The construction in the Noyes patent is indistinguishable from that called for by claim 11 of the Lovell and Williamson patent, and the operations of the two are identical. In both the clamping-bar descends so as to rest on the work preliminary to the actual cutting operation, and in both the power is applied

through mechanism which draws the knife-carrier and clamping-bar toward each other, so as to effect the clamping and cutting operation."

After describing certain of the constructions of the Noyes device, that patent says:

"With this construction, when the veneer has been arranged upon the center cross-bars of the end frames, A, B, the lever, F, is swung downward. The first effect of this movement is to draw the clamping blocks or bars, D, downward, to clamp the veneer upon the cross-bars of the frames, A, B. As the downward movement of the lever, F, is continued, the next effect is to force the bar, J, and the cutter, K, upward, and cause the teeth, k', to cut out the wood or chips between the tenons and form the shoulders of the said tenons."

This describes almost exactly the clamping and cutting operation of the Lovell and Williamson patent in suit. The other similarities of construction and operation are equally marked. It seems to me that anticipation is clearly shown, and that in this claim 11 we have no patentable invention disclosed, in view of the prior art. Should we assume that there is, it is of a most narrow character, in view of the prior art; and complainant is not entitled to any considerable range of equivalents, when charging infringement. He must show that defendant is using substantially the combination of claim 11 of Lovell and Williamson's patent in suit, so limited in its construction. Computing Scale Co. v. Automatic Scale Co., supra. A mere description of defendant's machine, Exhibit F, demonstrates that defendant is not using that combination, unless we allow the broadest possible range of equivalents. To this construction complainant is not entitled. In the first place, the defendant's construction does not require a frame or carrier to hold and move the knife and clamp together, and in it I am unable to find such a device or arrangement. If there is found such a device or arrangement so operating, it is of a character and construction so different from that of claim 11 in suit that it is not an equivalent of which the complainant can avail himself. The two machines in this regard are so clearly differentiated that infringement of claim 11 is not made out. On this point the witness Steuart says:

"A. The defendant's machine, shown in Complainant's Exhibit F, has simply adopted the ordinary common adjustment of two knives upon a carrier, where it is desired to operate upon work of different size. I do not find in the defendant's machine any part which answers at all to the term 'plate-carrier' as used in the claim; nor do I find in the defendant's machine any parts which correspond to the clamping-bar and knife-carrier as called for by said claim."

The result is that defendant does not infringe, and the bill of complaint must be dismissed, with costs.